UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| YOLANDA QUINTANILLA, | § | |
| | § | |
| Plaintiff, | § | Cv. No. SA:11-CV-1040-DAE |
| | § | |
| vs. | § | |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

ORDER: (1) ADOPTING IN PART AND VACATING IN PART MAGISTRATE
JUDGE'S REPORT AND RECOMMENDATION; (2) VACATING
COMMISSIONER'S DECISION; (3) REMANDING FOR FURTHER
PROCEEDINGS

Before the Court is the Report and Recommendation that the

Magistrate Judge filed on August 16, 2012. (Doc. # 18.) For the reasons that

follow, the Court **ADOPTS IN PART AND VACATES IN PART** the Magistrate

Judge's Report and Recommendation, **VACATES** the Commissioner's decision,

and **REMANDS** this matter for further proceedings.

BACKGROUND

Plaintiff Yolanda Quintanilla was born on October 23, 1957. (Tr. at

26, 152.) Plaintiff attended school through the tenth grade and completed her

GED. (Id. at 27, 330.) From May 1990 to April 2002, Plaintiff was employed as a

housekeeper at various motels, and she engaged in substantial gainful activity[1]

("SGA") in every year between 1991 and 2002, with the exception of 1995.  (Id. at

168–71.)  In approximately August 1990, Plaintiff began working as an executive

housekeeper at Roadway Inn.  (Id. at 39–43.)  Plaintiff's duties included

supervising and training employees, as well as giving input on hiring and firing.

(Id. at 42, 182–83, 196, 198.)  Physical responsibilities included lifting up to fifty

pounds and significant bending, stooping, and reaching.  (Id. at 182, 196.)

On April 2, 2003, complaining of foot swelling and pain in her back,

shoulder, arm, hip, and leg, Plaintiff alleged disability for the first time.  (Id. at 82.)

An MRI showed that Plaintiff had a herniated or ruptured disc and degenerative

disc disease.[2]  (Id. at 83, 245.)  Plaintiff underwent lumbar fusion surgery,[3] during

which metal cages were implanted in her back, in May of 2003.  (Id. at 83–84.)

Plaintiff continued to experience pain after the surgery and did not return to work.

(Id. at 84, 168.)  On August 29, 2005, Plaintiff saw Dr. David Dennis at the South

---

[1] Substantial Gainful Activity is "work activity that involves doing significant physical or mental activities" and is "done for pay or profit."  20 C.F.R. § 404.1572.  An employee's average, unsubsidized monthly earnings, minus "the reasonable cost of any impairment-related work expenses" constitutes SGA if it exceeds the amount proffered in a given year's earnings guidelines.  20 C.F.R. § 404.1574.

[2] The discs affected Plaintiff's lower back at level L5-S1.  (Tr. at 83.)

[3] Lumbar fusion surgery "permanently joins" bones in the spine to prevent "movement between them."  Spinal Fusion, http://www.nlm.nih.gov/medlineplus/ency/article/002968.htm (last visited July 26, 2013).

Texas Spinal Clinic.  (Id. at 245.)  Dr. Dennis deemed Plaintiff unready to return to work and diagnosed her with post-laminectomy syndrome,[4] failed spine surgery syndrome, and right lumbar radiculopathy.[5]  (Id. at 245.)  Plaintiff underwent a second surgery on July 21, 2006.  (Id. at 250-51.)  Dr. Dennis removed the cages and hardware implanted during Plaintiff's initial surgery and re-fused the L5-S1 level of lumbar spine, using bone grafts from Plaintiff's hips.  (Id.)  On July 31, 2006, Dr. Dennis reported that Plaintiff was doing "much better."  (Id. at 246.) However, Plaintiff did not return to work.  (Id. at 160.)

Plaintiff attempted to return to work on July 25, 2007 (id. at 160), and testified that she did so to support herself and other relatives living in her home. (Id. at 153, 207, 215.)  Roadway Inn rehired Plaintiff as executive housekeeper and provided accommodations, including the ability to work part-time.  (Id. at 43, 49–50, 58–59.)  Despite the accommodations, Plaintiff still experienced severe back, ankle, and knee pain, and again filed for disability on February 13, 2008. (Id. at 75–76.)  Plaintiff's gross 2007 earnings amounted to $4,394.25.  (Id. at 168.) Her earnings for the first quarter of 2008 were $2,787.00.  (Id. at 179.)

---

[4] Post-laminectomy syndrome is the medical term for "failed back syndrome."  See DM Long, Failed Back Surgery Syndrome, NEUROSURGERY CLINICS OF N. AM., 1991 Oct.;2(4):899-919, www.ncbi.nlm.nih.gov/pubmed/1840393.
[5] Lumbar radiculopathy is "pain that travels down from the compressed lumbar nerves (due to disc herniation) in the lower extremities."  (Tr. at 347-49.)

On February 13, 2008, Plaintiff filed concurrent applications for disability insurance benefits ("DIB") (id. at 75, 159–66) and supplemental security income ("SSI") benefits (id. at 76, 152–58) with an onset date of February 15, 2005.  (Id. at 33.)  In her initial complaint, Plaintiff alleged disability due to "chronic low back pain" and "major depressive disorder."  (Id. at 75–76.)  Plaintiff supplied additional information on March 15, 2008, alleging that she could not sit for more than five minutes, could not stoop, had high cholesterol, suffered from urinary incontinence and a prolapsed bladder, and experienced such great pain that she needed assistance to put on her underwear or wash her feet.  (Id. at 226.)  She also expressed frustration at her impairments.  (Id.)

On April 3, 2008, Dr. Cremona, a Social Security Administration ("SSA") physician, examined Plaintiff and found that she was five feet and one inch tall, weighed 174 pounds, and had a Body Mass Index ("BMI") of 33.  (Id. at 301.)  Dr. Cremona gave Plaintiff a secondary diagnosis of obesity.  (Id. at 299.)  On May 8, 2008, the SSA denied Plaintiff's claim for disability benefits.  (Id. at 101.)  On July 16, 2008, Plaintiff's claim was reconsidered and again denied.  (Id. at 19.)

In June 2008, Plaintiff began seeing Dr. Rojas, her treating physician.  (Id. at 353.)  Dr. Rojas diagnosed Plaintiff with "loss of bladder control and chronic low back pain with lumbar radiculopathy."  (Id. at 347–49.)  Dr. Rojas

referred Plaintiff to spinal surgeon Dr. Michael Murphy in July 2008.  (Id. at 437.)

Dr. Murphy found that Plaintiff had post-laminectomy syndrome and myofascial

pain syndrome.[6]  (Id. at 439.)  These conditions caused Plaintiff pain of 9 on a

scale of 10 as well as insomnia.  (Id. at 437.)  After attempting "conservative

treatments," including medication, with limited success, Dr. Murphy surgically

implanted an electronic stimulator unit in Plaintiff's low lumbar spine on

September 18, 2008.  (Id. at 363–64, 411–12.)  The stimulator decreases Plaintiff's

low back pain by 50 to 60 percent.  (Id. at 415.)  However, the stimulator must be

plugged into the wall or attached to a "battery pack" to operate.  (Id. at 62–63,

427.)  When the stimulator is not powered, Plaintiff still experiences severe

low-back pain that radiates down her right leg.  (Tr. at 59, 62–63.)  Plaintiff also

experiences weakness and loss of feeling in her right leg when the stimulator is not

powered.  (Id. at 59, 62–63, 427.)  Despite Plaintiff's neurotransmitter surgery, Dr.

Rojas reaffirmed his diagnosis of lumbar radiculopathy in April 2009.  (Id. at 440.)

Dr. Rojas also prescribed a cane, because Plaintiff "had fallen on numerous

occasions due to lumbar nerve related right foot drop."  (Doc. # 14 at 8, Tr. at 441.)

Plaintiff believes her foot drop is related to a broken ankle she suffered in 2005 and

---

[6] Myofascial pain syndrome is "chronic muscle pain disorder associated with focal
areas of exquisite tenderness called trigger points. . . . when stimulated, trigger
points refer pain to surrounding areas." Myofascial Pain Syndrome:
Characteristics, Diagnosis, and Treatment, (July 19, 2013, 9:42 AM),
www.ncbi.nlm.nih.gov/pubmed/10530102.

subsequent ankle injuries she suffered in 2007.  (Tr. at 48–49, 341–43.)  On April

19, 2009, Dr. Rojas completed a form indicating that he believed Plaintiff was

"permanently disabled."  (Doc. # 18 at 7.)

Subsequent to a written request for an administrative hearing, Plaintiff

received a hearing before an ALJ on April 17, 2009.  (Id. at 29–71.)  During the

administrative hearing, Plaintiff amended the onset date for her claim to June 2,

2007, due to an eighteen-month closed period of disability benefits awarded June

1, 2007.  (Id. at 33–34.)  During the hearing, the ALJ relied upon testimony from a

Vocational Expert ("VE") and found that Plaintiff was capable of performing jobs

that exist in the national economy.  (Id. at 26–27.)  Therefore, in an order dated

June 25, 2009, the ALJ found that Plaintiff:

> (1) "me[t] insured status requirements of the Social Security Act through
> September 30, 2011";
> (2) "had not performed substantial gainful activity ('SGA') since her
> amended onset date";
> (3) suffered from severe impairments, including "status post lumbar spine
> discectomy and fusion, status post hardware removal and refusion, and
> depression and anxiety associated with pain disorder";
> (4) "[did] not have an impairment or combination of impairments that meets
> or medically equals one of the listed impairments in 20 CFR Part 404,
> Subpart P, Appendix 1";
> (5) was able to "perform light work as defined in 20 CFR 404.1567(b) and
> 416.957(b), including standing and walking six hours in an eight hour work
> day, except claimant can occasionally climb ramps and stairs, crouch, crawl,
> kneel, bend, and stoop; can never climb ladders, ropes, and scaffolds; cannot
> work at hazardous heights or around dangerous moving machinery; and
> requires a cane to walk (not stand).  Claimant can perform simple, detailed
> but not complex tasks, and is limited to reasonable contact with other
> people;" and

(6) was "[u]nable to perform any past relevant work."[7]

(Id. at 21–26.)  Pursuant to these findings, the ALJ found that Plaintiff was not

disabled and not entitled to DIB or SSI benefits pursuant to 20 C.F.R.

§§ 404.1520(g) and 416.920(g).  (Id. at 27.)  The Appeals Council denied

Plaintiff's request for review, making the ALJ's determination the final decision of

the Commissioner.  Plaintiff then appealed the decision to the District Court, and

the case was referred to the Magistrate Judge.  (Doc. # 13.)  The Magistrate Judge

recommended that the ALJ's denial of benefits be affirmed (doc. # 18), and

Plaintiff timely objected (doc. # 20).

## STANDARD OF REVIEW

Any individual whose application for Supplemental Security Income

benefits is denied may request a review of the decision in federal district court.

Sharlow v. Schweiker, 655 F.2d 645, 648 n.1 (5th Cir. 1981) (citing 42 U.S.C.

§§ 42 U.S.C § 405(g) and 1383(c)(3)).  The reviewing court is charged with

determining whether the Commissioner's findings are supported by substantial

evidence in the record as a whole.  See Sharlow, 655 F.2d at 648 (citing Simmons

v. Harris, 602 F.2d 1233, 1236 (5th Cir. 1979)).  While an ALJ has the duty to

---

[7] "Past relevant work" is an individual's SGA prior to his or her first allegation of
disability.  Jones v. Bowen, 829 F.2d 524, 527 (5th Cir. 1987).  An individual's
ability to perform past relevant work is evaluated by measuring an individual's
current abilities against either the "actual demands of past work . . . or 'the
functional demands . . . of the occupation as generally required by employers
throughout the national economy.'"  Id.  (quoting S.S.R. 82-61).

fully develop the facts surrounding a claim for disability benefits, the court will not reverse a decision "for failure to fully and fairly develop the record unless the claimant shows that" the ALJ's failure to do so actually prejudiced him.  Carey v. Apfel, 230 F.3d 131, 142 (5th Cir. 2000).  To establish prejudice, a claimant must demonstrate that he or she "'could and would have adduced evidence that might have altered the result.'"  Id. at 142 (quoting Kane v. Heckler, 731 F.2d 1216, 1220 (5th Cir. 1984)).  The reviewing court's duty is not to "'reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision.'"  Id. at 135 (quoting Brown v. Apfel, 192 F.3d 492, 496 (5th Cir. 1999)); accord Myers v. Apfel, 238 F.3d 617, 619 (5th Cir. 2001).  Rather, the reviewing court's role is "'merely to determine if there is substantial evidence in the record to support the agency's decision.'"  Morris v. Bowen, 864 F.2d 333, 334 (5th Cir. 1988) (quoting Fortenberry v. Harris, 612 F.2d 947, 950 (5th Cir. 1980); 42 U.S.C. §§ 405(g) and 1383(c)(3)).  "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994) (quoting Richardson v. Parales, 402 U.S. 398, 401 (1971)).  It is "something more than a scintilla but less than a preponderance."  Carey, 230 F.3d at 135 (citing Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995)).

The district court must conduct a de novo review of any of the Magistrate Judge's conclusions to which a party has specifically objected.  See 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").  Findings to which no specific objections are made do not require de novo review; the district court need only determine whether the Report and Recommendation is clearly erroneous or contrary to law.  United States v. Wilson, 864 F.2d 1219, 1221 (5th Cir. 1989).

## APPLICABLE LAW

The Social Security Commissioner performs a five-step review when evaluating a disability claim.  See Alexander v. Astrue, 412 F.App'x 719, 720 (5th Cir. 2011).  "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." Guillen, 584 F. Supp. 2d at 934 (citation omitted).  The Commissioner evaluates whether:

> (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity.

Audler v. Astrue, 501 F.3d 446, 447–48 (5th Cir. 2007); 20 C.F.R. § 404.1520.

During the first four steps of the test, the claimant bears the burden of proof.  Boyd v. Apfel, 239 F.3d 698, 704 (5th Cir. 2001).  When the Commissioner reaches the

fifth step, however, "the burden is on the Commissioner to show that the claimant can perform relevant work." Id. at 705.  If the Commissioner is able to make this showing, the burden shifts back to the claimant, who "must then prove that he cannot in fact perform the work suggested." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991); 20 C.F.R. § 404.1520(f).

DISCUSSION

I.    The ALJ Conducted an Adequate Residual Functional Capacity Determination.

Before making a determination about a claimant's disability status, an ALJ must determine the individual's Residual Functional Capacity ("RFC").  An RFC determination "'is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities.'" Irby v. Barnhart, 180 F. App'x 491, 493 (5th Cir. 2006) (quoting S.S.R. 96–8p, 1996 WL 374184, at *2).  This assessment is designed to determine whether, in light of his or her impairments, a disability claimant is capable of performing a job in the national economy.

In the instant case, the ALJ found that Plaintiff had a "significantly restricted light RFC[8] that included . . . the use of a cane when ambulating." (Doc. # 14 at 8 (citing Tr. at 25).)  Plaintiff contends that when the ALJ determined her RFC, he failed to (1) adequately consider her cane usage (doc. # 14 at 8–9; doc. # 20 at 2); (2) consider the non-portability of her neurostimulator (doc. # 14 at 10; doc. # 20 at 4); (3) consider the "erosion of the light unskilled occupational base" (doc. # 14 at 9; doc. # 20 at 3); and (4) "comport with regulations, rulings, and case law" (doc. # 14 at 14; doc. # 20 at 11).  For these reasons, Plaintiff claims that her disability determination must be vacated and remanded to the Commissioner.

A.     The ALJ Adequately Considered Plaintiff's Cane Usage When he Determined Plaintiff's RFC.

Plaintiff contends that the ALJ did not adequately consider how her cane usage affected her RFC.  (Doc. # 14 at 9–10.)  First, Plaintiff contends that the ALJ should have completed a "function-by-function assessment" (id. at 15) to

---

[8] A light RFC "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. §404.1567(b).

determine whether Plaintiff's cane usage while ambulating affected her ability to use her hands or lift up to twenty pounds.  (Doc. # 14 at 9–10 (citing S.S.R. 83-14, 1983 WL 31254, at *4–5).)  Plaintiff argues that this error is grounds for remand because a disability claimant is only capable of a light work RFC if she is able to use both hands.  (Doc. # 17 at 4 (citing S.S.R. 83–14, at *4–*5).)  In addition, Plaintiff claims that the ALJ erred when he did not consider whether Plaintiff needed to use her cane to stand.  (Id.)  Plaintiff claims that neither the record nor Dr. Rojas's prescription clearly stated that Plaintiff's cane was prescribed only for use while ambulating and that the ALJ, when he made that determination, impermissibly "play[ed] doctor" and made "independent medical assessments." (Id. (quoting Frank v. Barnhart, 326 F.3d 618, 622 (5th Cir. 2003)).)

Plaintiff's contentions are without merit.  Even an individual suffering the complete loss of "use of an upper extremity" may still be able to perform a reduced "range of light work."  S.S.R. 83-12, 1983 WL 31253, at *4.  When a disability claimant is restricted to a reduced range of light work, the ALJ must consult a VE, who determines whether the limitation would prevent Plaintiff from finding work in the national economy.  S.S.R. 83-12, at *4.  The VE must provide specific testimony regarding jobs that exist in the national economy for a claimant with specified impairments; otherwise, the claimant is disabled.  S.S.R. 83-14, at *6.  In this case, the ALJ found that Plaintiff's ability to use her hands was

restricted by the need to use a cane while ambulating.  The ALJ properly consulted the VE to determine whether work existed for Plaintiff.  The VE testified that Plaintiff would be able to work as a Grader/Sorter, Teacher's Aide, or Parking Lot Attendant, and cited the specific availability of these jobs in the national economy. (Tr. at 67–68.)  An ALJ's determination that a plaintiff can perform a significant number of jobs that exist in the national economy is supported by substantial evidence if he relies upon a VE's testimony and the VE's testimony appears to be consistent with the record.  Gardner v. Barnhart, 160 F. App'x 428, 430 (5th Cir. 2005); S.S.R. 83-14.  That is precisely what the ALJ did here, so his determination that work existed for Plaintiff was supported by substantial evidence.[9]

Plaintiff, citing Newton v. Apfel, 209 F.3d 448 (5th Cir. 2000), argues that the Court can only evaluate the ALJ's failure to consider her cane usage based upon the reasons the ALJ himself proffered in his decision.  (Doc. # 17 at 3 (citing Newton, 209 F.3d at 455).)  However, this argument takes Newton out of context. Newton held that the ALJ's decision must be substantially consistent with the record.  See Newton, 209 F.3d at 458–59 (holding that the record must contain

---

[9]  Plaintiff contends that the VE's testimony was incorrect (1) because he relied on the ALJ's faulty RFC calculation when he determined that jobs were available for Plaintiff in the national economy and (2) because his testimony was inconsistent with the Dictionary of Occupational Titles ("DOT").  (Doc. # 14 at 10.)  For the reasons given herein, the ALJ's RFC calculation was supported by substantial evidence, so the VE's testimony was not flawed by virtue of its reliance on the RFC.  However, as discussed in Part II, the VE's testimony was indeed inconsistent with the DOT.

"substantial evidence to support the ALJ's decision" when the ALJ chooses to reject a Plaintiff's "claims of nonexertional impairments").  The ALJ does not have to adhere to a specific formula when explaining his decision and is only required to "articulate reasons for objecting to the claimant's subjective complaints" when the evidence in the record "clearly favors the claimant."  Falco v. Shalala, 27 F.3d 160, 163 (5th Cir. 1994); see also Abshire v. Bowen, 848 F.2d 638, 641 (5th Cir. 1988) (holding that an ALJ's decision regarding disability benefits can be evaluated not only by the reasons the ALJ includes in his decision, but also by the evidence available in the record).

Nothing in the record indicated that Plaintiff needed a cane while standing still.  The Commissioner's reply brief notes that the "Plaintiff's own testimony" supported the finding that Plaintiff needed a cane only to ambulate, not to stand.  (Doc. # 16 at 4; Tr. at 47–48, 61.)  Additionally, Plaintiff failed to raise this issue until the appeals stage: Plaintiff never amended her complaint to include the need to use a cane while standing, and Plaintiff's counsel did not raise the issue during the administrative hearing.  Because nothing in the record should have alerted the ALJ to Plaintiff's alleged need to use a cane while standing—an issue that Plaintiff now raises for the first time—the ALJ's failure to address that issue does not warrant remand.

B.   <u>The ALJ Adequately Considered the Effect of Plaintiff's
Neurostimulator on her Ability to Work.</u>

Plaintiff contends that the ALJ did not fully consider the effect of her

neurostimulator when determining her RFC.  (Doc. # 14 at 11.)  Plaintiff argues

that the ALJ would not have found her capable of light work if he had considered

that Plaintiff was only able to operate her neurostimulator and alleviate her back

pain "when she was stationary near a[n] electrical outlet or her fixed battery pack

accessory."  (<u>Id.</u>)  Likewise, Plaintiff contends that the VE's testimony was not

supported by substantial evidence because he did not consider the "restriction on

[her] movement away from a fixed workstation (based on the need for an electrical

outlet or fix[ed] battery pack)."  (<u>Id.</u> at 12.)

Plaintiff's contention that her neurotransmitter must be connected to

an electrical outlet or a large fixed battery pack is not supported by the record.

While Plaintiff testified that her neurostimulator can be powered either by an

external battery or by plugging it into an electrical outlet (Tr. at 62–63), Plaintiff

also testified that the neurostimulator "only needs to be charged every three days."

(<u>Id.</u> at 62.)  Contrary to Plaintiff's contention, her testimony did not indicate that

"she must remain 'hooked up' to an immobile power source" in order to utilize her

neurostimulator.  (Doc. # 18 at 10.)  The Magistrate Judge correctly noted that

while Plaintiff surely carries "batteries to power the unit so that she can be mobile,

there is no evidence in the record that would substantiate Plaintiff's allegation that

this battery pack prevents her from using her non-dominant hand." (Id.)  In fact, there is nothing in the record indicating that Plaintiff must hold the battery pack in her hand.  Likewise, there is no reason to believe that the VE's testimony was flawed merely because he did not consider any restrictions caused by Plaintiff's neurostimulator.

The record does not support the argument that the ALJ should have considered additional restrictions imposed by the neurostimulator when he calculated Plaintiff's RFC.  As such, the ALJ relied on substantial evidence and did not err when calculating Plaintiff's RFC.

C.   The ALJ Was Not Required to Consider the "Erosion of the Light Unskilled Occupational Base."

Plaintiff argues that the ALJ's determination is flawed because the ALJ did not sufficiently address whether Plaintiff's nonexertional impairments reduced Plaintiff's capacity to secure a job within the unskilled, light occupational base.  (Doc. # 17 at 4.)  First, Plaintiff states that "the VE was never asked for, and failed [to] provide any number or percentage of occupations remaining of the 1571 light, unskilled occupations listed in the DOT given the substantial . . . restrictions contained in the hypothetical RFC, which included the use of a cane in the dominant right hand for ambulation."  (Doc. # 14 at 10.)  Plaintiff argues that if the ALJ had inquired about the percentage of jobs in the national economy available to

Plaintiff, the number would have been so low that he would have found her disabled.  (Doc. # 17 at 4.)

A nonexertional impairment, such as Plaintiff's inability to use her dominant hand while ambulating, may reduce the job base available to a claimant. However, this reduction does not mandate a disability finding.  S.S.R. 83-14. Plaintiff correctly asserts that when a disability claimant is unable to use a limb, this restriction "'must be considered very carefully to determine its impact on the size of the remaining occupational base of a person who is otherwise found functionally capable of light work.'"  (Doc. # 20 at 4 (citing S.S.R. 83-14, at *4).) However, the fact that the ALJ must carefully "consider" the inability to use a limb implies that such inability does not automatically render a claimant disabled. When "the total number of occupations within [a claimant's] RFC is less than the number represented by a full or wide range of light work,"  S.S.R. 83-12, at *4, the ALJ should consult a VE to determine whether the "limitations on the job base" reduce the jobs available to the plaintiff such that a finding of disability is mandated.  S.S.R. 83-14, at *6.  If the VE is able to cite "specific jobs within the individual's RFC," S.S.R. 83-12, at *4, and provide evidence that such work exists "in the region in which the individual resides or in several regions of the country," S.S.R. 83-14, at *6, the ALJ has substantial evidence to render a decision of "not

disabled." S.S.R. 83-12, at *4. There is no additional duty to address the "erosion of the light, unskilled occupational base." (Doc. # 17 at 4.)

As stated above, the ALJ consulted a VE before making a disability determination. The VE testified that Plaintiff was capable of performing at least three specific jobs that exist in sufficient numbers in the Texas economy. The ALJ had no further duty to convert these jobs into a percentage representing the national economy as a whole. Therefore, the ALJ's RFC determination was supported by substantial evidence.

D.   The ALJ Adequately Comported with Rules, Regulations, and Case Law.

Next, Plaintiff argues that the ALJ's decision was not supported by substantial evidence because, in two respects, he failed to "comport with regulations, rulings, and case law." (Doc. # 14 at 14; doc. # 20 at 11.)

First, Plaintiff insists that the ALJ's RFC evaluation did not include an "'initial function-by-function assessment of [Plaintiff's] physical and mental capacities.'"[10] Myers v. Apfel, 238 F.3d 617, 620 (5th Cir. 2001) (citing S.S.R. 96-8p, at *3). When an ALJ calculates a claimant's RFC, he must assess each of the individual's "physical . . . capacities" by separately considering "'seven

---

[10] Plaintiff argues that such an assessment requires the ALJ to individually consider Plaintiff's restrictions on "sitting, lifting, carrying, pushing, and pulling." (Doc. # 14 at 15-16.)

strength demands."[11]  Myers, 238 F.3d at 620 (citing S.S.R. 96-8p); accord Chavira

v. Astrue, No. 11-CV-00262, 2012 WL 948743, at *22 (S.D. Tex. Feb. 29, 2012).

This evaluation "must be 'based on all relevant evidence in the claimant's record.'"

Borrego v. Astrue, 825 F. Supp. 2d 779, 785 (W.D. Tex. 2011) (quoting Perez v.

Barnhart, 415 F.3d, 457, 462 (5th Cir. 2005)).  The evaluation must also "'include

a resolution of any inconsistencies in the evidence.'"  Borrego, 825 F. Supp. 2d at

785 (quoting Myers, 238 F.3d at 620).  The purpose of this discussion is to cite

"'specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g.,

daily activities, observations)'" to ensure that objective "'evidence supports each

conclusion.'"  Chavira, 2012 WL 948743, at *19 (citing S.S.R. 96-8p, at *6–*7).

An ALJ errs if he does not address each of the seven strength factors when he

makes an RFC determination.  However, a determination that fails to address each

of the seven strength factors is still based upon substantial evidence—and is

therefore not reversible error—if it is consistent with the record and based upon a

medically acceptable source.  See Beck v. Barnhart, 205 F. App'x 207, 213–14

(5th Cir. 2006).  When an ALJ's decision is based upon medical records that

include "a function-by-function analysis of the impact of [Plaintiff's] impairments

on her ability to perform various tasks . . . cited in conjunction with the ALJ's own

---

[11] The seven strength demands are "sitting, standing, walking, lifting, carrying, pushing, and pulling."  S.S.R. 96–8p.

appraisal of [Plaintiff's] impairments on her ability to perform various tasks," it is supported by substantial evidence.  Id.

In the instant case, the ALJ did not explicitly address the seven strength factors.  However, Dr. Cremona, a State Social Security Doctor on whose assessment of Plaintiff the ALJ relied in making his decision, did specifically address each of the seven strength demands in his report.[12]  Plaintiff argues that the ALJ did not explicitly adopt the assessment from Dr. Cremona and therefore "cannot rely on the State Agency Assessment to cure the lack of the required function-by-function initial RFC assessment."  (Doc. # 20 at 12.)  However, no evidence in the record indicates that the ALJ did not rely upon Dr. Cremona's RFC assessment, which was before him.  Instead, as the Magistrate Judge noted, "[i]t is apparent from comparing Dr. Cremona's findings with the ALJ's RFC assessment that the ALJ adopted Dr. Cremona's findings in making his decision."  (Doc. # 18 at 12.)  Therefore, while the ALJ did not follow administrative guidelines when he determined Plaintiff's RFC, he nonetheless relied upon substantial evidence.  See Beck, 205 F. App'x at 213–14.

---

[12] Dr. Cremona found that Plaintiff was able to sit for "about 6 hours in an 8-hour workday" (Tr. at 300); could frequently lift and/or carry ten pounds and occasionally lift and/or carry twenty pounds (id.); and had an "unlimited" capacity to "push and/or pull" (id.).

Furthermore, under the "substantial evidence" standard, "the ALJ's error warrants remand only if it prejudiced [the Plaintiff]." Gonzales v. Astrue, SA-09-CA-590-XR, 2010 WL 2775866, at *7 (W.D. Tex. July 14, 2010); see also Frank, 326 F.3d at 622.  Plaintiff bears the burden of proving that the ALJ's error prejudiced her claim, which she may do by demonstrating "that the disability determination might have been different had the ALJ made specific findings . . . ." Gonzales, 2010 WL 2775866, at *7.  Here, Plaintiff's only claim is that her case would have come out differently if the ALJ had considered her ability to "lift and carry with her dominant right hand while ambulating with a handheld cane in her dominant right hand."  (Doc. # 20 at 12; doc. # 14 at 9–12.)  However, when the ALJ evaluated Plaintiff's ability to perform a limited range of light work, he specifically questioned the VE about claimant's ability to work while using a cane. (Tr. at 67.)  In response to this question, the VE removed "fast food worker" from his original list of jobs available Plaintiff and replaced it with "teacher aide."[13]  (Id. at 67– 68).  Subsequently, the ALJ acknowledged that Plaintiff "requires a cane to walk (not stand)."  (Id. at 25.)  Plaintiff is unable to show that the ALJ's error was not harmless; therefore, the ALJ's failure to explicitly address each of the seven strength demands that factor into an RFC assessment does not amount to reversible error.

---

[13] Whether the testimony is correct is a separate issue which will be discussed below.

Plaintiff's second allegation is that the ALJ erred because he did not consider whether Plaintiff could meet the functional "demands [of a restricted light RFC] on a regular and continuing basis." (Doc. # 14 at 16 (citing Myers, 238 F.3d at 620–21).) However, this contention is also without merit. The ALJ only has a duty to consider whether a plaintiff would be able to work "on a regular and continuing basis" if the plaintiff had "intermittently recurring symptoms." Frank v. Barnhart, 326 F.3d 618, 619 (5th Cir. 2003). Plaintiff stated on the record that she suffers from constant back pain. (Tr. at 48–49, 59–62.) Therefore, her symptoms are continuous, rather than intermittent, and the ALJ need not have considered whether she could meet the functional demands of a restricted light RFC on a regular and continuing basis.

II.   The Vocational Expert's Testimony Was Not Consistent with the Dictionary of Occupational Titles.

During Plaintiff's hearing before the ALJ, the ALJ presented a hypothetical question to the VE regarding an individual who had an RFC similar to Plaintiff's but who did not need to use a cane.[14] The VE responded that there were sufficient occupations in the national economy available to the hypothetical worker: fast-food worker (150,000 jobs available in Texas), parking lot attendant

---

[14] Specifically, the ALJ included the following limitations: "occasional: ramps, stairs, stoop, crouch, crawl, kneel. All of the following are never: ropes, ladders, scaffolds, dangerous balancing. Simple jobs, detail jobs, not complex jobs. Reasonable contact with others, meaning more than just a little but not a job or overwhelming contact with others." (Tr. at 66–67.)

(3,000 jobs available in Texas), and sorter/grader (28,000 jobs available in Texas).
(Tr. at 67.)  The ALJ modified the hypothetical to describe an individual who also
required a cane to ambulate, and the VE replied that such an individual could not
be a fast-food worker but could be a teacher's aide (6,000 available in Texas).  (Tr.
at 67–68.)  The ALJ asked the VE whether his testimony was "consistent with the
Dictionary of Occupational Titles and it's [sic] Supplemental Selected
Characteristics."  (Tr. at 70.)  The VE replied that his testimony was consistent
with the Dictionary of Occupational Titles ("DOT").  (Tr. at 70.)

Plaintiff argues that the VE's testimony did not accurately account for
Plaintiff's impairments and that the testimony conflicts with the occupational
descriptions provided in the DOT.[15]  (Doc. # 14 at 12.)  Specifically, Plaintiff
alleges that: (1) the Parking Lot attendant position requires Plaintiff to use both
hands (hence, the VE did not account for Plaintiff's cane usage) (id. at 13); (2)
while multiple sorter/grader positions are listed in the DOT, all "Grader"
occupations are skilled or semi-skilled, some "Sorter" occupations are
semi-skilled, and all "Sorter" occupations require Plaintiff to use both hands (id.);
and (3) the Teacher's Aide position requires specific vocational preparation.  (Id.)

---

[15] The Dictionary of Occupational Titles is a compilation published by the
Department of Labor; it catalogues "standardized occupational information to
support job placement activities," and assigns a unique identification number to
each occupation.  U.S. Dep't. of Labor, Dictionary of Occupational Titles,
Introduction, 4th ed. (1991), available at http://www.oalj.dol.gov/libdot.htm.

Plaintiff contends that the record did not provide an adequate basis to rely upon the VE's testimony.  (Doc. # 17 at 6.)  The VE's testimony, insists Plaintiff, failed to identify specific occupations; did not explain how Plaintiff would perform jobs that required use of both hands; and cited skilled and semi-skilled occupations, when Plaintiff is only capable of unskilled work.  (Doc # 14 at 13–14; Doc. # 17 at 6.)  Plaintiff argues that these failures degrade the "probative value and reliability" of the VE's testimony.  (Doc. # 17 at 6; S.S.R. 00-4p.)  Plaintiff also contends that the record is incomplete where there is a conflict between the VE's testimony and the DOT and the ALJ has not "obtain[ed] a reasonable explanation for the apparent conflict."  (Id. at 5; S.S.R. 00-4p, 2000 WL 1898704, at *2.)  Accordingly, Plaintiff argues that the record does not contain substantial evidence to support the ALJ's finding that Plaintiff is not disabled, because the jobs to which the VE testified do not exist.

     A.    <u>Direct and Implicit Conflicts Between VE Testimony and the DOT</u>

        In <u>Carey v. Apfel</u>, 230 F.3d 131, 142 (5th Cir. 2000), the Fifth Circuit drew a distinction between "direct and obvious conflict[s]" between VE testimony and the DOT and those conflicts that are merely "tangential" or "implicit."  <u>Id.</u> at 146.  An 'implicit' conflict arises where the claimant does not believe that she has the actual physical ability to perform a job the VE offers during an administrative hearing but the DOT's job description does not explicitly support the claimant's

argument.[16]  See id.  An "implied or indirect conflict between the vocational

expert's testimony and the DOT" is lost unless it is properly raised at the hearing

before the ALJ.  Jasso v. Barnhart, 102 F. App'x. 877, 878 (5th Cir. 2004); see also

Castro v. Astrue, No. 3:09-CV-1700 2011 WL 125284, at *10 (N.D. Tex. Apr. 1,

2011) (holding that a plaintiff loses the ability to present an implied conflict as

reversible error when she does not raise it during an administrative hearing);

Gaspard v. Soc. Sec. Admin. Comm'r, 609 F. Supp. 2d 607, 613 (E.D. Tex. 2009).

When a claimant first raises an implied conflict on appeal, the reviewing court's

role "is merely to determine whether the Commissioner's determination is

supported by substantial evidence."  Carey, 230 F.3d at 146.  This is because: (1)

the "categorical requirements listed in the DOT" cannot possibly anticipate every

possible conflict in its occupational descriptions, and (2) allowing claimants "to

scan the record for implied or unexplained conflicts between the specific testimony

of an expert witness and the voluminous provision of the DOT . . . when the

conflict was not deemed sufficient to merit adversarial development in the

administrative hearing" would run counter to public policy.  Carey, 230 F.3d at

146–47.

---

[16] For example, a VE may testify that a claimant can be a ticket seller or cashier,
though he can only use one hand. While a claimant may make the argument that he
is unable to perform either job with only one hand, the conflict is implied, because
the DOT does not state that a person must have two functional hands to perform
either job.  See Carey, 230 F.3d at 145–46.

By contrast, a 'direct' conflict occurs where there is a "discrepancy between the ALJ's determination of the claimant's residual functional capacity and the vocational expert's testimony that the claimant can perform certain identified jobs with inconsistent skill requirements."[17] Carey, 230 F.3d at 147. Carey did not involve a direct and obvious conflict, but the court noted in dicta that where there is a direct and obvious conflict between the VE's testimony and the DOT, the probative value of the testimony would be "'so lessened that reversal and remand for lack of substantial evidence usually follows.'" Gaspard, 609 F. Supp. 2d at 613 (quoting Carey, 230 F.3d at 146); accord Castro, 2011 WL 125284, at *10.

Subsequent to Carey, the SSA issued S.S.R. 00-4p, a regulation explaining how an ALJ should treat VE testimony. While the Fifth Circuit has yet to adopt S.S.R. 00-4p, a number of courts in this District have cited the provision with approval, noting that "while Social Security rulings lack the force of law, they are persuasive." Baty v. Barnhart, 512 F. Supp. 2d 881, 894 (W.D. Tex. 2007); accord Huizar v. Astrue, 642 F. Supp. 2d 614 (W.D. Tex. 2009) (holding that it is appropriate to rely on S.S.R. 00-4p when evaluating a VE's testimony in a Social

---

[17] When determining exertional skill levels, one must refer to the DOT. The DOT lists the Specific Vocational Preparation ("SVP") time required for each DOT occupation listing. SSR 00-4p translates the SVP numbers into skill levels, using the meaning of the numbers as described in 20 C.F.R. §§ 404.1568 and 416.968. "[U]nskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT." S.S.R. 00-4p, at *4. See Huizar v. Astrue, 642 F. Supp. 2d 614, 637 (W.D. Tex. 2009).

Security Disability claim).  Pursuant to S.S.R. 00-4p, after the VE testifies in an

Administrative Hearing, the ALJ must "inquire, on the record, as to whether or not

there is such consistency [between the VE's testimony and the DOT]."  <u>Huizar</u>,

642 F. Supp. 2d at 636 (citing S.S.R. 00-4p, at *2).  If the VE's testimony conflicts

with the skill or exertional levels listed in the DOT, the VE must explain the

discrepancy by providing information about the proffered jobs that is more specific

than the information provided in the DOT.  <u>See</u> <u>Huizar</u>, 642 F. Supp. 2d at 636

(citing S.S.R. 00-4p, at *3).  If the VE is unable to "provide a reasonable

explanation for the discrepancy and provide a basis for relying on the expert's

testimony rather than on the DOT," the ALJ may not rely on the VE's testimony.

<u>Huizar</u>, 642 F. Supp. 2d 636 (citing S.S.R. 00-4p, at *4).  If the ALJ relies on VE

testimony that conflicts with the DOT and does not provide any explanation for

doing so, the case must be remanded to "fully develop the record" to determine

Plaintiff is in fact disabled.  <u>See</u> <u>Huizar</u>, 642 F. Supp. 2d at 638.

> B.   <u>Plaintiff Raises One Implicit Conflict and One Direct Conflict</u>

Plaintiff raises two issues: (1) whether the ALJ correctly relied upon

the VE's testimony that Plaintiff could work as a Parking Lot Attendant or

Grader/Sorter, considering that Plaintiff alleges she cannot handle objects with

both hands; and (2) whether the ALJ was correct to rely on the VE's testimony,

where this testimony conflicted with the skill levels listed in the DOT.

The first issue presents an implied conflict that Plaintiff failed to raise during the administrative hearing.  Plaintiff argues that she cannot work as a Parking Lot Attendant or a Grader/Sorter because these jobs require a worker to use two hands to handle objects, reach, and sort items.  However, the DOT does not state that either job requires the use of both hands.  In other words, this is an implied conflict: It involves a discrepancy between the abilities Plaintiff believes necessary to the job and the abilities actually listed in the DOT.  Because Plaintiff's counsel declined the opportunity to question the VE during the administrative hearing (Tr. at 70), Plaintiff waived the right to raise this implied conflict on appeal.

The second issue, on the other hand, presents a direct conflict.  While the ALJ only found Plaintiff capable of "unskilled work," Plaintiff alleges that the VE cited "semi-skilled" and "skilled" jobs when he listed careers that existed for Plaintiff in the national economy.  (Doc. # 14 at 12–13.)  The VE testified that Plaintiff could work as a Sorter/Grader.  (Tr. at 67.)  This is not a specific career but a generic category listed in the DOT.  The Court located three "Grader" jobs in the DOT, each of which is considered "semi-skilled."[18]  See S.S.R. 00-4p at *4.  The Court was able to locate a single "unskilled" Sorter Position: "Sorter,

---

[18] Specifically: "Grader, Canning and Preserving Industry," DOT 529.687-098 (SVP Level 3); "Grader, Meat Industry," DOT 525.387-010 (SVP Level 3); and "Grader, Lumber," DOT 669.687-030 (SVP Level 4).

Agricultural Produce."[19]  However, because the VE testified about the availability of the entire category of jobs, rather than the specific "Sorter, Agricultural Produce" position, the record does not indicate whether this particular job exists in significant numbers in the national economy.  Finally, there are two listings for Teacher's Aide in the DOT: Teacher's Aide I, DOT 099.327-010 (SVP Level 6), and Teacher's Aide II, DOT 249.367-074 (SVP Level 3).  Teacher's Aide I is "skilled" work; Teacher's Aide II is "semi-skilled" work.

After the VE provided his testimony, the ALJ inquired whether these recommendations were consistent with the DOT.  (Tr. at 70.)  The VE testified—incorrectly—that they were.  As the VE is an expert, the ALJ had no reason to believe there was any discrepancy between the VE's testimony and the DOT, and thus these discrepancies were never explained on the record.  Again, however, if the VE's testimony conflicts with the skill or exertional levels listed in the DOT, the VE <u>must</u> explain the discrepancy by providing information about the proffered jobs that is more specific than the information provided in the DOT.  <u>See</u> <u>Huizar</u>, 642 F. Supp. 2d at 636 (citing S.S.R. 00-4p, at *3).  Where, as here, the ALJ relies on VE testimony that conflicts with the DOT and does not provide any explanation for doing so, the case must be remanded to "fully develop the record" to determine whether the plaintiff is in fact disabled.  <u>See</u> <u>Huizar</u>, 642 F. Supp. 2d at 638.

---

[19] "Sorter, Agricultural Produce," DOT number 529.687-186 (SVP Level 2).

Accordingly, the Court remands this matter and instructs the ALJ to fully develop

the record to address the discrepancy between the jobs the VE specified and

Plaintiff's skill level to determine whether Plaintiff is capable of work that exists in

the national economy.

III.    The ALJ Adequately Considered Plaintiff's Obesity.

The SSA relies on the National Institute of Health's ("NIH") Clinical

Guidelines to define obesity.  These guidelines

> classify overweight and obesity in adults according to Body Mass Index
> (BMI).  BMI is the ratio of an individual's weight in kilograms to the square
> of his or her height in meters (kg/m$^2$).  For adults, both men and women, the
> Clinical Guidelines describe . . . a BMI of 30.0 or above as "obesity."

S.S.R. 02-1p, 2002 WL 34686281, at *2 (citing NIH Publication No. 98-4083,

September 1998).  The Code of Federal Regulations recognizes that obesity is "a

medically determinable impairment" and that "[t]he combined effects of obesity

with musculoskeletal impairments can be greater than the effects of each of the

impairments considered separately."  (20 C.F.R. § 404, Subpt. P., App. 1 at *8.)

When a claimant alleges obesity in a Social Security Disability claim,

the ALJ must verify the truth of this allegation by considering whether the

claimant's obesity is properly documented in the record.  S.S.R. 02-1p, at *3.

"[I]ndividuals with obesity do not necessarily have any occupational impairments,"

Vansa v. Astrue, 423 F. App'x 381, 383 (5th Cir. 2011), and an ALJ must perform

"an individualized assessment" of an obese claimant to assess "the impact of

obesity on an individual's functioning" and determine whether this impact is severe.  S.S.R. 02-1p, at *4.

When a claimant does not raise the claim of obesity in her disability application, the ALJ is under no obligation to consider whether the claimant's obesity affects her disability claim.  See Beck, 205 F. App'x at 212, 212 n.3 (noting that while the ALJ did consider the effect of obesity on the plaintiff's functional limitations, he was never under any obligation to do so because Plaintiff never alleged that her BMI of 36 caused any specific functional limitations that would render her disabled).  When a claimant does not allege a "restriction of specific functional capacity" and the case record does not suggest such a limitation or restriction, "the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity."  S.S.R. 96-8p, at *3.

Plaintiff has a BMI of 33 (Tr. at 301), rendering her obese.  Plaintiff argues that the ALJ's decision was not supported by substantial evidence because the ALJ did not consider how Plaintiff's obesity affected her "ability to perform routine movement and necessary physical activity" or how her obesity might compound her "other physical impairments."  (Doc. # 14 at 14 (citing S.S.R. 02-1p).)  Plaintiff specifically argues that the ALJ did not consider that her "obesity results in greater pressure on, not only her impaired lower lumbar levels, but also her impaired right ankle."  (Doc # 14 at 15.)  Plaintiff argues that the

ALJ's failure to consider her obesity prejudiced her claim, violates her substantive Due Process rights, and constitutes a reversible legal error requiring remand to the SSA.  (Doc. # 20 at 12.)

The Court agrees with and adopts the Magistrate Judge's determination that the ALJ did not commit reversible error when he failed to explicitly consider Plaintiff's obesity, because obesity does not automatically render a claimant disabled.  See Vansa, 423 F. App'x at 383.  Plaintiff never listed obesity as an impairment when she filed for disability with the SSA.  Additionally, neither Plaintiff nor her counsel made a single mention of obesity in the administrative hearing, even though Plaintiff's counsel had ample opportunity to raise the claim.  Finally, while Plaintiff's treating physicians regularly recorded Plaintiff's height and weight in her medical records, only Dr. Cremona, the Social Security Agency's physician, actually noted that Plaintiff was "obese."  (Tr. at 301.)  The ALJ relied upon Dr. Cremona's report when calculating Plaintiff's RFC, meaning he did consider Plaintiff's obesity when he evaluated her disability status. (Id. at 25, 301–05.)  Absent any direct claims from Plaintiff that her obesity was disabling, the ALJ had no further duty to consider Plaintiff's obesity when he evaluated her disability status.  See S.S.R. 96-8p, at *3.  Accordingly, the ALJ did not commit reversible error when he failed to explicitly address Plaintiff's obesity.

IV.   The ALJ's Failure to Recontact Plaintiff's Treating Physician Is Not
Reversible Error.

When a treating physician offers the opinion that an individual is
disabled, the ALJ may not "arbitrarily reject [that] medical testimony . . . ."
Copenhaver v. Astrue, No. A–09–CA–838–SS, 2011 WL 891617, at *6 (W.D.
Tex. Mar. 11, 2011); see also 20 C.F.R. § 404.1527(e)(1) ("[W]e consider opinions
from medical sources on issues such as whether your impairment(s) meets or
equals the requirements of any impairments [that support a disability finding].").
However, the mere fact that a treating source finds a claimant disabled is not
binding on the ALJ, because the ultimate decision as to whether a claimant is
disabled is an administrative finding "reserved to the Commissioner."  S.S.R.
96-5p, 1996 WL 374183, at *4 (emphasis added); 20 C.F.R. §§ 404.1527(d) and
416.927(d).  The ALJ has the authority to reject the treating physician's finding
that a claimant is disabled, so long as he explains his decision.  Martinez v. Chater,
64 F.3d 172, 176 (5th Cir. 1995).

The ALJ is required "to develop the facts fully and fairly relating to
an applicant's claim for disability benefits."  Newton, 209 F.3d at 458 (citing
Ripley, 67 F.3d at 557); accord 20 C.F.R. § 404.1512.  This requires the ALJ to
make "every reasonable effort" to contact a claimant's treating physician when
necessary to develop the claimant's medical history.  20 C.F.R. § 404.1512(d).
"[T]reating sources are to be recontacted if the basis for their opinions is unclear."

Cain v. Barnhart, 193 F. App'x 357, 361 (5th Cir. 2006).  However, if "the record

contain[s] ample objective and opinion evidence supporting the ALJ's conclusions

. . . he [is] not required to develop the record further by contacting [the treating

physician]."  Jones v. Astrue, 691 F.3d 730, 733 (5th Cir. 2012); accord Cornett v.

Astrue, 261 F. App'x 644, 648 (5th Cir. 2008); Newton, 209 F.3d at 453.  If a

plaintiff is granted "the opportunity to supplement [her] respective record[] with

additional medical reports from [her] treating physician[]," the ALJ does not

commit a harmful error or "affect [the plaintiff's] substantial rights" if he fails to

recontact the plaintiff's treating physician himself.  Fink v. Barnhart, 123 F. App'x

146, 148 (5th Cir. 2005).

   Finally, "[t]he failure of the ALJ to develop an adequate record is not

. . . grounds for reversal per se."  Kane, 731 F.2d at 1220.  Rather, an ALJ's

decision should only be reversed "if the applicant shows prejudice from the ALJ's

failure to request additional information."  Newton, 209 F.3d at 459.  Reversal for

failure to develop the record is only appropriate where the ALJ does not explain

his reasoning and "the record does not contain substantial evidence to support the

ALJ's decision that [the plaintiff] had no significant nonexertional impairments."

Id.  A plaintiff can demonstrate prejudice by "'showing that additional evidence

would have been produced if the ALJ had fully developed the record, and that the

additional evidence might have led to a different decision.'"  <u>Newton</u>, 209 F.3d at

458 (citing <u>Ripley</u>, 67 F.3d at 557).

Plaintiff argues that the ALJ had a duty to recontact Dr. Rojas to

understand his reasoning before dismissing his disability finding.  (Doc. # 14 at

16–17) (citing S.S.R. 96-5p).  Further, Plaintiff argues that ALJ knew the record

was incomplete, and that the missing documents were important, because "the

missing records would likely [have] provide[d] the objective testing results

supporting Dr. Rojas's April opinion of [Plaintiff's] permanent disability."  (Doc.

# 14 at 17 (citing Tr. at 50–55, 71).)

Plaintiff's argument is without merit.  Dr. Rojas offered the <u>opinion</u>

that Plaintiff was disabled and cited two reasons to support that opinion: (1)

Plaintiff's "lumbar radiculitis/radiculopathy" and (2) Plaintiff's "implanted

neurotransmitter."  (Tr. at 440.)  The record indicated that Plaintiff's last visit to

Dr. Rojas was on June 14, 2008, prior to Plaintiff's neurotransmitter surgery.

Thus, during the administrative hearing, the ALJ noted that while Dr. Rojas's

opinion was clear, it was not entitled to controlling weight unless it was supported

by objective evidence.  (<u>Id.</u> at 50–55, 347.)  Plaintiff claimed that she had visited

Dr. Rojas four to five times after her surgery (<u>id.</u> at 51–53), and her counsel

testified that she had contacted Dr. Rojas's office for additional records in January

of 2009 but had not received any.  (<u>Id.</u> at 53.)  Counsel requested that the record be

left open for two weeks so that she could obtain any additional records and submit them to the ALJ.  (Id. at 54.)  The ALJ granted the request, noting that he would give much greater weight to Dr. Rojas's testimony if Plaintiff could prove she had indeed seen him four to five times after her surgery.  (Id. at 53–54.)  Plaintiff's counsel did not ask that the ALJ secure these records on her behalf.

Four days after the hearing, Plaintiff's counsel submitted additional medical records to the ALJ; however, these records were not from Dr. Rojas, but Dr. Murphy.  (Id. at 442–44.)  The records, dated September 26, 2008, report that Plaintiff's pain had lessened, that Plaintiff was able to sleep through the night, and that Plaintiff had experienced "functional improvement in her activities of daily living, sitting, standing, and walking."  (Id. at 443–44.)  While Plaintiff's counsel was aware that the records from Dr. Rojas were important, she did not indicate her intention to submit any further evidence into the record, nor did she submit any additional records.

When the ALJ issued his decision, he explained his choice to reject Dr. Rojas's opinion, stating that:

> The opinion is accorded little weight because Dr. Rojas did not specify functional limitations found on examination or other objective evidence to support the opinion.  Significantly, the opinion of Dr. Rojas is inconsistent with the record as a whole (including claimant actually working) and therefore not entitled to significant weight in the decision making process. 20 CFR 404.1527, 20 CFR 416.927.

(Tr. at 25.)  The record included comprehensive medical documents spanning from Plaintiff's first consultative visit with Dr. Dennis for her second spine surgery in 2005 (Tr. at 243–245) to her most recent recorded visit with Dr. Murphy on September 26, 2008 (id. at 442), well after Plaintiff's March 6, 2008 application for disability benefits.  This more than satisfies the requirement that the ALJ develop the record for at least the twelve months prior to Plaintiff's application for disability benefits.  20 C.F.R. § 404.1512(d).  Additionally, Plaintiff's counsel testified that she would secure the additional records from Dr. Rojas, removing any duty the ALJ might have had to recontact Dr. Rojas prior to rejecting his opinion. Therefore, the ALJ had no independent duty to develop the record.

Ultimately, the disability determination is not one for the doctor but for the ALJ himself.  As such, the ALJ was not required to adopt Dr. Rojas's opinion that Plaintiff was disabled and was not required to contact Dr. Rojas simply because he was not going to heed Dr. Rojas's opinion.  Because Counsel did not provide the medical records after taking responsibility for doing so, the ALJ properly relied on the evidence before him—namely, the most recent medical record, which stated that Plaintiff experienced less pain after her neurotransmitter was implanted—and had good reason not to adopt Dr. Rojas's opinion as his own. Accordingly, the ALJ's decision to reject Dr. Rojas's finding that Plaintiff was disabled was supported by substantial evidence.

V.      The ALJ Did Not Complete the Credibility Assessment Required for Pain
        Evaluation.

                When a Social Security Disability claimant alleges disabling pain, the

decision about "whether pain is disabling is an issue for the ALJ," and the ALJ's

decision will be upheld as long as it is supported by substantial evidence.

Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001).  When a claimant

complains of disabling pain, a decision that does not consider the claimant's

subjective evidence is not supported by substantial evidence.  Owens v. Heckler,

770 F.2d 1276, 1281 (5th Cir. 1985) (holding that "[f]ailure to consider subjective

evidence of pain is reversible error" and that dismissing subjective complaints of

pain without due consideration is "arbitrary" and grounds for remand).

                When a claimant alleges disabling pain, the ALJ must first decide

whether the claimant's subjective complaints of pain are linked to "an underlying

medically determinable physical or mental impairment."  S.S.R. 96-7p, 1996 WL

374186, at *2; accord Salgado v. Astrue, 271 F. App'x 456, 460–61 (5th Cir.

2008).  At this step, the ALJ does not consider whether the claimant's claim is

believable but only whether a medical condition exists that could possibly cause

the claimant pain.  S.S.R. 96-7p, at *2; see also Salgado, 271 F. App'x at 460–61.

If the ALJ discovers that the claimant's pain is linked to an underlying medical

condition, he must consider "the entire case record" to determine whether the

claimant's statements "about the intensity, persistence, or functionally limiting

38

effects of pain" are credible.  S.S.R. 96-7p, at *3.  This credibility assessment is necessary to account for "individuals [who] experience their symptoms differently and may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments and the same medical signs and laboratory findings."  S.S.R. 96-7p, at *3–*4.  It also ensures that the ALJ makes a credibility assessment grounded in concrete evidence rather than feelings.  Id.  An ALJ is not obligated to find the claimant's allegations of pain believable; however, he must include clear and specific reasons for rejecting allegations of pain— reasons that are understandable to a reviewing court—to ensure that a claimant receives "a full and fair review of his or her claim."  S.S.R. 96-7p, at *4.

The SSA has promulgated seven specific categories the ALJ should address "in addition to the objective medical evidence" to ensure that his determination is adequately clear and specific:

(1) The individual's daily activities;
(2) The location, duration, frequency, and intensity of the individual's symptoms;
(3) Factors that precipitate and aggravate the symptoms;
(4) The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
(5) Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
(6) Any measures other than [medical] treatment the individual uses . . . ;
(7) Any other factors concerning the individual's functional limitations due to pain or other symptoms.

Salgado, 271 F. App'x at 462 (citing S.S.R. 96-7p, at *3).  While the Fifth Circuit does not require the ALJ to strictly follow these criteria when evaluating a Plaintiff's subjective claims of pain, an ALJ is still "bound . . . to explain his reasons for rejecting" those complaints of pain.  Falco, 27 F.3d at 163–64.  "[I]t is not sufficient for the adjudicator to make a single, conclusory statement that the individual's allegations have been considered."  Id.; see also Salgado, 271 F. App'x at 462 (holding that ALJ sufficiently considered the credibility of claimant's subjective claims of pain when he evaluated claimant's "daily activities . . . the location of her pain . . . and other alleviating measures such as lying down when she was in too much pain to continue cooking or cleaning" in addition to considering "objective medical evidence . . . and [claimant's] testimony regarding her ability to perform various tasks").  When the record contains evidence that could support a claimant's allegations of disabling pain and the ALJ does not discuss this evidence before dismissing the complaint, the decision is not supported by substantial evidence.  Newton, 209 F.3d at 459; see also Salgado, 271 F. App'x at 462 (holding that a "[f]ailure to indicate the credibility choices made and the basis for those choices in resolving the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints requires reversal and remand"); Abshire, 848 F.2d at 642 (same).

Plaintiff argues that while the record did contain evidence that could support her allegations of disabling pain, the ALJ dismissed her complaints without discussion, making only the "conclusory statement" that her claims were accepted only insofar as they were supported by her medical record.  (Doc. # 14 at 18 (citing Tr. at 25).)  Plaintiff argues that the ALJ's decision does not indicate that he considered her surgical history, her unsuccessful attempts to return to work, or the differences in Plaintiff's pain according to Dr. Murphy and Dr. Rojas.

The Magistrate Judge concluded that the ALJ "'assign[ed] articulated reasons for discrediting [Plaintiff's] subjective complaints'" (doc. # 18 at 23 (citing Falco, 27 F.3d at 163)) and met his duty to evaluate the intensity, persistence, and "limiting effects" of Plaintiff's symptoms.  The Magistrate Judge found that the ALJ had supported his determination by citing the fact that Plaintiff returned to work in 2007, which the Magistrate Judge believed was corroborated by the fact that Plaintiff was still working as a housekeeper "as of the date of the decision." (Doc. # 18 at 23 (citing Tr. at 26).)  In addition, the Magistrate Judge found that Plaintiff's pain was not disabling because Dr. Murphy had reported that Plaintiff was "doing better" (doc. # 18 at 23) and Dr. Cremona had found Plaintiff capable of performing a limited range of light work (id. at 23–24).

This Court disagrees.  The ALJ made only two references to Plaintiff's subjective claims of pain in his entire decision: (1) "[I]if the claimant is

41

saying the stimulator has not reduced her pain overall, that testimony is rejected"
(Tr. at 23); and (2) "After careful consideration of the evidence . . . claimant's
medically determinable impairments could reasonably be expected to cause the
alleged symptoms; however, the claimant's statements concerning the intensity,
persistence and limiting effects of these symptoms are not credible to the extent
they are inconsistent with the above residual functional capacity assessment."  (Id.
at 26.)  The ALJ made no attempt to explain why or how he came to this
conclusion.  He did not "indicate the credibility choices made and the basis for
those choices in resolving the crucial subsidiary fact of the truthfulness of
subjective symptoms and complaints."  Salgado, 271 F. App'x at 462.  Instead, he
merely rejected, without discussion, any allegations of pain that were inconsistent
with the RFC assessment.  As explained below, the record contains numerous
indications that Plaintiff's complaints of disabling pain may have been credible,
and the ALJ's failure to provide specific, articulable reasons for disregarding those
complaints constitutes reversible error.  See Salgado, 271 F. App'x at 462 (holding
that a "[f]ailure to indicate the credibility choices made and the basis for those
choices in resolving the crucial subsidiary fact of the truthfulness of subjective
symptoms and complaints requires reversal and remand").

        The record shows that Plaintiff has been seeking treatment for her
back pain since 2002.  (Id. at 245.)  The SSA has recognized that "a longitudinal

medical record demonstrating an individual's attempts to seek medical treatment for pain . . .  lends support to an individual's allegations of intense and persistent pain." S.S.R. 96-7p, at *7.  Additionally, Plaintiff's allegations of pain have been consistent.  In her reports to various doctors, her prior application to the SSA for SSDI benefits, and the paperwork filed in the instant suit, Plaintiff has consistently reported the same symptoms and pain.  On April 2, 2003, Plaintiff reported "feet swelling, back, shoulder, arm, hip, and leg pain" (Tr. at 83); the SSA recognized the legitimacy of Plaintiff's complaints in February 2005 when it awarded Plaintiff an eighteen-month period of closed disability for ailments including "chronic pain."  (Id. at 96.)  When Plaintiff filed the instant disability claim on March 7, 2008, she reported that she had "a lot of discomfort on lower back, left hip . . . ." (Id. at 213.)  These claims are well supported by Plaintiff's surgeries and doctors' visits.  Plaintiff's pain also affects her daily living activities.  Plaintiff states that her pain makes it difficult to "wash feet or put on underwear or socks."  (Id. at 215, 226.)  During her administrative hearing, Plaintiff stated that her pain was severe enough that she "[could not] hold a broom and sweep or mop" (id. at 59), was unable to do housework (id. at 63), and relied on her family members to do the grocery shopping (id. at 60).

　　　　　While the Magistrate Judge correctly held that the ALJ is not required to "follow formalistic rules in evaluating credibility" (doc. # 18 at 23 (citing Falco,

27 F.3d at 164)), the Magistrate Judge did not address relevant case law stating that an ALJ must still conduct his own assessment of a claimant's credibility.  The Magistrate Judge resolved other conflicts in the evidence regarding Plaintiff's pain by citing Dr. Murphy's testimony that Plaintiff was "doing better."  (Doc. # 18 at 23.)  Immediately after Plaintiff's second back surgery in 2006, Dr. Dennis (then her treating physician) reported that Plaintiff was doing "much better" (Tr. at 246), yet Plaintiff did not experience permanent relief.  Dr. Murphy's two-word statement that Plaintiff was doing better does not meet the evidentiary standard to overcome an entire record supporting Plaintiff's allegations of pain.  Finally, the Magistrate Judge's statement "that plaintiff was still working part time as a housekeeper as of the date of the decision" (doc. # 18 at 23) is contrary to the ALJ's findings that Plaintiff had not engaged in substantial gainful activity since her amended disability onset date (June 2, 2007).  (Tr. at 21–26.)

　　　　　The ALJ did not sufficiently address a 440-page record consistently alleging disabling back pain.  He briefly mentioned the fact that Plaintiff attempted to return to work in 2007–2008 (id. at 25) and broadly dismissed the remainder of Plaintiff's claims as "not credible to the extent they are inconsistent with the above residual functional capacity assessment" (id. at 26).  This broad statement indicates that the ALJ did not perform a credibility assessment; he merely rejected Plaintiff's claims to the extent that they were inconsistent with her RFC, denying her a full

and fair review of her claim.  <u>Salgado</u>, 271 F. App'x at 462; <u>Falco</u>, 27 F.3d at 163–

64; S.S.R. 96–7p.  While the ALJ may have been justified in finding that Plaintiff's

complaints of pain were not meritorious, his decision was not supported by

substantial evidence in the record.  Accordingly, the Court vacates the

Commissioner's decision and remands this matter for additional findings regarding

the credibility of Plaintiff's subjective complaints of pain.

<u>CONCLUSION</u>

For the reasons given, the Court **ADOPTS IN PART AND**

**VACATES IN PART** the Magistrate Judge's Report and Recommendation,

**VACATES** the Commissioner's decision, and **REMANDS** this matter to the

Commissioner with instructions (1) to address the direct conflict between the VE's

testimony and the skill levels listed in the DOT and (2) to conduct a credibility

assessment regarding Plaintiff's subjective complaints of disabling pain.

**IT IS SO ORDERED.**

**DATED:** San Antonio, Texas, August 8, 2013.

_____
David Alan Ezra
Senior United States District Judge